COSTA, Appellee, v. COX; BUCKEYE UNION CASUALTY CO., Appellant.

Ohio Appeals, Ninth District, Summit County.

No. 4727.   Decided March 5, 1958.

Beery, Underwood, Ryder, Kroeger & Verde, for appellee.
Slabaugh, Walker, Pflueger, Roderick & Myers, for appellant.

## OPINION

By DOYLE, J.

The questions presented in this appeal from a money judgment rendered in the Court of Common Pleas of Summit County, in favor of one Dulcinia Chrisella Costa, a minor, and against the Buckeye Union Casualty Co., relate primarily to the casualty company's claim of lack of co-operation by the insured in the preparation of a defense to the lawsuit, lack of notification to the company of the accident, and the lack of permission of the alleged tort-feasor to drive the insured's car at the time of the accident.

It appears that on the 12th day of September, 1952, the Costa child was struck and injured by an automobile being driven by Alvin Cox, and owned by his uncle, Alvin E. Howe, Jr., the named insured, in a liability insurance policy issued to him by the Buckeye Union Casualty Company, the appellant herein.

On December 29, 1952, a petition was filed and summons issued on behalf of the injured child, and against the driver, Alvin Cox. Service of summons was made upon the defendant, Cox, through the Secretary of State, under authority of §2703.20 R. C.

On December 14, 1954, a judgment was entered against Cox, in the sum of $4,500. Cox was in default for answer and appearance. Subsequent to the elapse of thirty days from the rendition of this judgment, a supplemental petition was filed against the insurance company, under the provisions of §3929.06 R. C.

Issues were joined in this action on this supplemental petition, with the admission by the casualty insurance company that it had issued a policy to Alvin E. Howe, Jr., but that (1) at the time of the accident the automobile "was not being operated by Alvin E. Howe, Jr., the named insured, and was not being used by any person who was then and there operating said automobile with the permission of said named insured * * *"; (2) "* * * the said Alvin Cox failed wholly and completely to comply with the terms of condition No. 16 [of the policy], absconded after the accident * * *, and has remained in parts unknown ever since said occurrence."

The defendant company, further answering, alleged "that because the said Alvin Cox failed to co-operate with this defendant, failed to attend hearings and trial, failed to secure and give evidence, assist in obtaining witnesses and in the conduct of the suit, such violation of the condition of the policy constitutes a bar to any rights of indemnity which said Cox might otherwise have under said policy and the law."

The answer further pleaded the following provisions of the policy:

Paragraph "III" of the "Insuring Agreements":

" * * 'insured' includes the named insured and also includes any

person while using the automobile and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is by the named insured or with his permission."

Paragraph "16" of the "Conditions":

"Assistance and co-operation of the insured. * * * The insured shall co-operate with the company and, upon the company's request, shall attend hearings and trials and shall assist in effecting settlements, securing and giving evidence, obtaining the attendance of witnesses and in the conduct of suits. * * *"

The appellant company, in its quest of a reversal of the trial court's judgment against it in the amount of the judgment against Cox, assigns the following errors, which it claims are prejudicial in character:

"1. The court erred in refusing to direct a verdict for the defendant on the ground that plaintiff failed in his burden of proving that Cox was operating Howe's car with Howe's permission at the time of the accident within the meaning of 'Insuring Agreement III' of appellant's policy.

"2. The court erred in refusing to direct a verdict for the defendant on the ground that Cox failed to comply with 'Condition 16' of the policy, which requires 'assistance and co-operation of the insured.'

"3. The court erred in submitting the case to the jury and in its instructions to the jury, which were erroneous, incomplete, and contrary to law."

In appraising the claims of errors, we turn first to the factual background.

There is evidence to justify the following narration of events:

Alvin E. Howe, Jr., the named insured, on the day of the accident (September 12, 1952), gave permission to his nephew, Alvin Cox, to drive his (Howe's) automobile for the purpose of transporting him (Howe) from his home in Barberton, Ohio, to his place of employment in Akron; and to then continue on and get Mrs. Howe, his wife, at a house several blocks from his place of employment, and drive her to the Howe home in Barberton. Cox was further instructed by Howe to drive the car back to Akron, get him at 4:30 p. m., at his place of work, and drive him home to Barberton.

In carrying on the arrangement, Howe and Cox proceeded from Barberton to Akron and arrived at Howe's place of employment at 8 a. m.; Mrs. Howe was then driven to Barberton by Cox.

The normal driving time between the points in Akron and Barberton was about 25 minutes. At about 1 p. m., Cox, while driving the car in Akron, struck and injured the Costa child. A police officer at the scene of the accident cited Cox to appear in the Akron Municipal Court to answer a charge of operating a motor vehicle without a driver's license. He was ordered to appear at a time several days later.

Following the accident, Cox's whereabouts was unknown, except that on the same afternoon he secured some of his personal belongings from his room in the Howe home (where he was temporarily residing) and apparently departed from the city. Howe, at the end of his day's work, proceeded to his Barberton home and commenced looking for his

car. He found it, in the evening, parked in front of a saloon not far from his home. A short time later he discovered that his car had been in an accident. He made no report to his insurance company.

Several days after the accident, the father of the injured child attempted to see Howe, the owner of the car, but was unsuccessful. Finally, on November 11, 1952, he met him in Barberton, and was told that Cox's whereabouts was unknown, and that Cox had not been given permission to use the car.

At another meeting on December 7, 1952, Howe told the child's parents that he had given Cox permission to drive for the purpose heretofore set forth. He likewise gave information relative to his insurance coverage.

During this period of time the Costas had retained counsel, and on December 15, 1952, the casualty company was notified of the accident by the Costas' attorney. It thereupon commenced its investigation by communicating with Howe. The record speaks as follows relative to the company's investigation:

"Q. Were Mr. and Mrs. Howe able to furnish you with any address that Mr. Cox could be reached?

"A. No. During the course of my questioning of Mr. and Mrs. Howe the only information they could give me was that he had been with them a week to perhaps ten days. They said that his wife had lived in a rooming house somewhere around 4th (Street) in Barberton, they didn't know the address. I asked if there were any relatives in town or anybody who might know where Cox might be and the answer was 'No.'

"Q. Was any specific address furnished you by Mr. and Mrs. Howe * * * as to some place in Washington or Oregon where it was believed he might have gone?

"A. No, when Cox came to live with Howe, his purpose was to stay long enough until he could collect his pay at the Columbia Chemical, then he was going out to Astoria, Oregon, to reconcile his differences with his wife—he and his wife broke up some time early in September—Mrs. Howe didn't know the maiden name of Mr. Cox's wife—they only knew or thought she was from Astoria, Oregon.

"Q. Did you make any check as to the size of that city?

"A. No, sir, I hadn't made any personal check—I understand it is a town though roughly 10,000 population. The only other—the town of Longview, Washington, was mentioned by Mr. Cox the night he left, he told Mrs. Howe he intended to go to Longview, Washington, to work in a lumber camp, but they didn't know whether he had gone to Washington or Oregon."

It appears that the casualty company's attempt to locate Cox was confined to its several contacts with the Howes, the local police department relative to its attempt to find him locally to answer for the offense of driving a car without a license, and to its several negotiations with the attorney for the Costas. The record indicates nothing else of consequence done to prepare itself to defend the action brought against Cox.

As heretofore noted, the casualty company was, on December 15, 1952, notified of the accident by counsel for the Costas, and it commenced a cursory investigation. On December 29, 1952, a petition was filed against Cox, and the company was duly notified.

From the fact that the company took no steps to defend the action, it must be assumed that it concluded that it was under no obligaion to either defend the action, or pay any judgment which might be rendered. The judgment by default was not taken until almost two years after this suit was filed.

1. The company, by way of avoidance, first claims that "Cox did not have permission to use the * * * vehicle." Of course, if this claim is established, no liability would attach to the company because of the policy provision designated as "III," supra.

As we read the record, we find from the direct testimony of the named assured, Howe, and the reasonable inferences to be drawn from other evidence, that a jury could properly find (as it did) that Cox, at the time of the accident, was driving the car with the permission of the named assured, and as a consequence had insurance coverage in so far as the question of permission was involved.

2. It is asserted that "there was a lack of notification to the company of any accident, claim or suit," and that "no notice of accident of any kind was furnished to the company by anyone until approximately three months after said accident."

It will be remembered that immediately after the accident the parents of the injured child sought the owner of the car involved. They eventually were able to talk with him (Howe) and finally secured from him information relative to his insurance coverage, as well as information relative to the permission given to Cox to drive the car  Shortly after this information was reluctantly given by Howe, the insurance company was notified by the attorney for the injured child. No claim is made that the named insured, Howe, nor Cox, the permissive user, gave notice. The claim is only that notice from the injured child, through her attorney, was sufficient to comply with the policy provisions.

While the case law in Ohio appears somewhat conflicting, the following paragraph of the syllabus in **Hartford Accident and Indemnity Co. v. Randall et al, 125 Oh St 581,** appear not to have been overruled or distinguished. They are:

"3. Where a policy of indemnity casualty insurance obligates the insurance company to defend, in the name and on behalf of the assured, any suit against the assured within the terms of the policy, and as a condition thereto requires that immediate notice of such be given to the company, such notice is waived if, prior to such suit, the company by its authorized agent disclaims liability to indemnify and declares its intention not to defend the suit for that reason.

"4. A person injured by the assured in such manner · as to entitle the assured to indemnity under the policy, has such potential beneficial interest in the policy, by the provisions of §9510-4 GC [§3929.06 R. C.], as to warrant such injured person to comply with the terms and conditions of the policy agreed to be performed by the assured, even though such performance be without the knowledge or concurrence of the as-

sured, and a waiver to such injured party is equivalent to a waiver to the assured."

In the policy under consideration, there appears the following provisions (under "Conditions"):

"1. Notice of accident. * * * When an accident occurs written notice shall be given by or on behalf of the insured to the company or any of its authorized agents as soon as practicable. Such notice shall contain particulars sufficient to identify the insured and also reasonably obtainable information respecting the time, place and circumstances of the accident, the names and addresses of the injured and of available witnesses.

"2. Notice of claim or suit. * * *. If claim is made or suit is brought against the insured, the insured shall immediately forward to the company every demand, notice, summons or other process received by him or his representative."

Judge Marshall, in Hartford Accident and Indemnity Co. v. Randall, et al., supra, observed (at p. 586) that the Code section [§3929.06 R. C.], which authorizes suit against an insurance company after judgment, "clearly involves the principle of subrogation. * * * If the injured party is subrogated. to the rights of the insured, those rights could only be made effective to him if he is permitted to comply with the terms and conditions of the policy, rather than depend upon the assured, who may conceivably not perform such conditions."

In applying the law to the facts now before us, we are of the opinion that, after the casualty insurance company was seasonably notified of the accident by the attorney for the injured person, and after a casual investigation had disclaimed all liability for damages and further had disclaimed any .duty to defend the action, such conduct on the part of the company constituted a waiver of a strict compliance with the notice provisions in the policy, and permitted the injured person to comply as best she could with the terms and conditions of the contract of insurance, on the theory that the injured person is subrogated to the rights of the insured under the provisions of the statute, which of course must be read into the insurance contract.

3. One of the defenses was a complete failure of the tort-feasor, Cox, to assist and co-operate under the provision "16" of the policy, heretofore set forth. To this claim we now direct attention.

This case was tried in the Court of Common Pleas by a judge of long experience. In overruling a motion for a new trial, the court filed for the record its theory of the present question. The court observed:

"There is no claim upon the part of the insurance company that it defended and the testimony of the insurance representative especially at page 65 conclusively shows that there was nothing done by way of preparation of a defense or investigation beyond the mere fact of attempting to ascertain the whereabouts of the person who was the driver of the automobile at the time of the collision. The record is also full of the facts that there was no inquiry or attempt made at any time to ascertain the whereabouts of the driver except from the named insured."

Page 65 of the record, to which reference is made above, indicates

that the company had the names and addresses of witnesses to the accident, secured from the police report, but had not interrogated them for the purpose of preparing a defense.

The trial court continued:

"In this state of the record the defendant wants the court to say that the defendant insurance company may not perform under its contract, but may have the protection of the contract that it failed to fulfill * * *."

In respect to the assistance and co-operation clause in the policy, it is, of course, "a material condition of the policy, the violation of which by the insured forfeits his rights to claim idemnity * * *. It is a condition precedent, failure to perform which, in the absence of waiver or estoppel, constitutes a defense to liability on the policy." **Conold v. Stern, 138 Oh St 352, at p. 359.**

The weight of authority is, that a "defense on the ground of the assured's violation of co-operation clause is an affirmative one on which insurer carries the burden of proof." Annotation, 72 A. L. R. 1446, subdivision IV at p. 1453, and cases there cited.

Whether the asserted breach of the assistance and co-operation clause by the insured would defeat a recovery by the injured party in any particular case, must necessarily be determined from a consideration of all of the facts and circumstances. In cases where an insured leaves the scene of an accident, and his whereabouts remain unknown after diligent search by the insurance company, and his testimony is necessary to establish a defense, such facts, if established, would probably defeat a recovery by an injured party under proper pleadings.

However, in cases where a tort-feasor, driving the car of an insured person, with his permission, leaves the scene of an accident, following a police citation for an unrelated offense (driving without a state license), and, possibly unaware of any insurance coverage, leaves the city with no specific forwarding address, and the insurance company, pursuant to notice of the accident, makes no substantial effort either to locate him, or to investigate known witnesses, or to prepare any defense, and in fact refuses to take part in ensuing litigation, for the reason that it has disclaimed all liability, a different question is presented.

What constitutes "co-operation," within a policy requiring the assured to co-operate with the insurer, is usually a question of fact.

The word itself means "to act or to operate jointly with another or others." With the application of the metaphor, it is sometimes said to be "a two-way street"—an effort on the part of the insurance company to fulfill its contract, coupled with the help and assistance of the insured.

Basically, the policy provision gives a right to the insurance company to the assistance and help of the insured, but before this right can be demanded, the company must fulfill its contractual obligations. It is obligated to defend a suit against its insured, and, in this connection, to make adequate preparation for the defense; and further, if the whereabouts of the insured is unknown, to exercise reasonable diligence in searching for him, and procuring his help in the preparation of a defense and his attendance at the trial.

As we view the record before us, the company assumed the position, almost two years before judgment was entered against the insured, that it was under no contractual obligation to Cox. It may have taken this position because it thought that Cox operated the car without permission of the owner; or, because Cox had left the city under unusual circumstances, that it was under no duty to look for him; or that it had not been properly notified. Be that as it may, we are of the opinion that the question of permission, notice, and co-operation and assistance, were questions of fact for the jury; and the conclusions of the jury, under the charge of the court, are sustained by the evidence and are not manifestly against the weight thereof.

We find no error of a prejudicial character in the charge of the court.

The judgment will be affirmed.

We find conflict in the judgment to be here rendered with the judgment rendered in **Howell v. Frost et al, 98 Oh Ap 127.** We therefore certify this case to the Supreme Court of Ohio for its determination.

HUNSICKER, PJ, STEVENS, J, concur.