[Cite as *McCruter v. Travelers Home & Marine Ins. Co.*, 2021-Ohio-472.]

# IN THE COURT OF APPEALS

## ELEVENTH APPELLATE DISTRICT

## LAKE COUNTY, OHIO

| | | |
|---|---|---|
| SHONDA MCCRUTER, AS MOTHER OF L.J., | : | **O P I N I O N** |
| | : | |
| Plaintiff-Appellant, | : | **CASE NO. 2019-L-167** |
| | : | |
| - vs - | : | |
| | : | |
| THE TRAVELERS HOME AND MARINE INSURANCE COMPANY, | : | |
| | : | |
| Defendant/Third Party Plaintiff-Appellee, | : | |
| | : | |
| - vs - | : | |
| | : | |
| VERONICA MALDONADO ARIAS, | : | |
| | : | |
| Third Party Defendant. | | |

Civil Appeal from the Lake County Court of Common Pleas, Case No. 2018 CV 001834.

Judgment: Affirmed in part, reversed in part, and remanded.

*George R. Oryshkewych*, 6100 Oak Tree Boulevard, Suite 200, Independence, Ohio 44131 (For Plaintiff-Appellant).

*Steven D. Strang* and *Gary L. Nicholson*, Gallagher Sharp LLP, Bulkley Building, Sixth Floor, 1501 Euclid Avenue, Cleveland, Ohio 44115 (For Defendant/Third Party Plaintiff-Appellee).

MARY JANE TRAPP, P.J.

{¶1}   Appellant, Shonda McCruter ("Ms. McCruter"), as mother of L.J., appeals

the judgment of the Lake County Court of Common Pleas granting summary judgment to

appellee, The Travelers Home and Marine Insurance Company ("Travelers"), and denying her motion for summary judgment.

{¶2} This matter involves a supplemental complaint Ms. McCruter filed on behalf of L.J. against Travelers seeking to recover a judgment in the amount of $16,780.68 entered against Veronica Maldonado Arias ("Ms. Arias") for injuries that L.J. incurred from Ms. Arias' dog.

{¶3} Travelers insured Ms. Arias under a homeowners' policy. However, Travelers and Ms. Arias entered into letter agreement in which Ms. Arias purportedly declined coverage for the occurrence and Travelers purportedly disclaimed its duties of defense and indemnification.

{¶4} Ms. McCruter argues that the trial court erred by granting Travelers' motion for summary judgment, where the trial court found there are no genuine issues of material fact that Ms. Arias violated terms of the policy and that such violations prejudiced Travelers and relieved it of its duty to pay Ms. McCruter's judgment against Ms. Arias. Ms. McCruter also argues that the trial erred by denying her motion for summary judgment.

{¶5} After a careful review of the record and pertinent law, we find that neither party is entitled to summary judgment. We find the trial court erred as a matter of law to the extent it found Ms. Arias violated a policy provision that imposes no duties upon her. We also find that genuine issues of material facts exist regarding whether Travelers waived the policy's notice requirement and whether Travelers was prejudiced by late notice. With respect to Ms. Arias' alleged violations of the policy's cooperation requirements, we find there are genuine issues of material fact as to whether (1) the

2

parties colluded to impair Ms. McCruter's rights under the policy, (2) the letter agreement constitutes an improper cancellation of the policy under Ohio law, (3) Ms. Arias violated the cooperation requirements, and (4) Travelers waived these requirements.

{¶6} Thus, we affirm in part, reverse in part, and remand this matter for further proceedings consistent with this opinion. Upon remand, Ms. McCruter's claims against Travelers, as well as the determination of Travelers' damages with respect to its default judgment against Ms. Arias, remain pending.

## Substantive and Procedural History

{¶7} In August 2017, Ms. McCruter, as the mother of L.J., a minor, filed a complaint in the Lake County Court of Common Pleas against Ms. Arias, a resident of Georgia. Ms. McCruter alleged that in July 2017, L.J. was walking in Fairport Beach Park with her mother and other family members. Ms. Arias was walking her pit bull in the same general vicinity, when the dog lunged at L.J. and "bit and/or clawed" her face, causing an approximately one-inch laceration beneath L.J.'s left eye.

{¶8} At the time of the incident, Ms. Arias and her husband were insured through a homeowners' policy issued by Travelers. Ms. Arias apparently did not want to involve Travelers in the matter. Instead, she retained an Ohio attorney, Jason L. Carter ("Attorney Carter"), to defend her in the lawsuit. She did not notify Travelers regarding the incident or Ms. McCruter's lawsuit.

### Initial Communications with Travelers

{¶9} On May 14, 2018, Ms. McCruter's counsel, George R. Oryshkewych ("Attorney Oryshkewych"), sent a letter to Travelers at its home office in Connecticut, notifying Travelers of the incident and his client's pending lawsuit against Ms. Arias,

3

enclosing a copy of the complaint, and requesting that the matter be assigned to a claims adjuster. Travelers received the letter on May 18. On May 22, Travelers opened a claim and assigned it to Anthony Shell ("Mr. Shell"), an adjuster in Traveler's Indiana office. Travelers also communicated with the insurance agent regarding the underlying facts of the incident and the status of the lawsuit.

{¶10} On May 23, Ms. Arias spoke to a colleague of Mr. Shell by telephone and indicated she did not want Travelers involved in the lawsuit.

{¶11} On May 24, Mr. Shell and Ms. Arias exchanged email correspondence. Ms. Arias confirmed that she was not filing a claim with Travelers and was handling the matter herself. Mr. Shell responded that he would need to review to determine whether Travelers could avoid involvement. Internally, Travelers engaged in coverage analysis.

{¶12} On May 25, Mr. Shell and Ms. Arias exchanged further email correspondence. Mr. Shell requested information about the dogs Ms. Arias owns, stating that he "must have at least this information" since Travelers cannot "unknow" that which it became aware. He wrote that he would move forward with closing the claim and that Travelers may require her to sign a document in the presence of a notary public. Ms. Arias responded with the requested information. She also provided information regarding the circumstances of the incident.

{¶13} During June 2018, Travelers general counsel conducted a legal review of Ms. Arias' request to waive coverage and handle the matter herself.

{¶14} On July 3, 2018, Attorney Oryshkewych sent a follow up letter to Travelers' home office in Connecticut. He advised Travelers that after Ms. McCruter obtained a judgment against Ms. Arias, she intended to file a supplemental complaint against

4

Travelers pursuant to R.C. 3929.06(A)(2) unless Travelers paid the judgment in full within 30 days.

### *The Letter Agreement*

{¶15} On July 9, Mr. Shell sent an email to Ms. Arias in which he stated that for Travelers to withdraw, she must acknowledge that Travelers will not be able to assist her with the claim any longer at any point, including if an award was made against her. He attached a letter from himself on Travelers letterhead for Ms. Arias' review. He requested that she and any other policy holder sign the acknowledgment contained on the last page in the presence of a notary public and return it to him.

{¶16} In the letter, Mr. Shell acknowledged receipt of Ms. McCruter's lawsuit and the presentment of a claim under the policy. He also memorialized Travelers' understanding that Ms. Arias wished to proceed with defending the lawsuit on her own without Travelers' assistance. He wrote that before Travelers could agree, it must discuss her rights and what she would be giving up if she decided to proceed as she had requested. Mr. Shell then set forth duplicated portions of Ms. Arias' policy regarding Travelers' contractual duties.

{¶17} A section of the letter entitled, "Your Request," states as follows:

{¶18} "Your Travelers Homeowners Policy was written to cover certain general liability expousres [sic] associated with home ownership, including dog bite(s). In your policy, coverage for defense is included, as is indemnity and medical payments. However, both are under the sole discretion of Travelers when they are involved in the defense of our insured. You have made a specific request for Travelers not to be involved in this case * * *. To date, you have retained your own counsel, when [sic] you have paid

5

at your sole expense, and have been defending this case per your direction.  Travelers was only put on notice by the Plaintiff's counsel directly, something that you did not want to occur.  Even though your application for insurance lacked acknowledgment of dogs on your premises or that you owned [sic], that in itself would not preclude coverage based on our review as pitt [sic] bulls are not presently an excluded breed of dogs on a Georgia homeowner's application with Travelers.

{¶19} "If you wish to continue this case at your sole expense, you must understand that Travelers, nor its affiliates, will defend nor indemnify, or reimbursement [sic] you in any way in regards to this case or any verdict that may be assessed.  Your insurance coverage will continue for any other covered losses, but you will not be able re-request [sic] assistance from Travelers in regards [sic] to this lawsuit.  By signed [sic] the attached page, you are stating that you understand and agree that you are not going to cooperate or allow us to investigate or defend you in this matter any longer, and that may result in an irrevocable prejudice with Travelers would [sic] potentially void coverage under this policy for this loss."

{¶20} Mr. Shell requested that Ms. Arias sign the last page of the letter in the presence of a notary public.  This page states as follows:

{¶21} "By signing below, I agree that I have read and understand the attached letter in regards [sic] to the lawsuit titled *Shonda McCrutter [sic], As Mother of [L.J.], A Minor v. Veronica Maldonado Arias* and it is my decision to not use my Homeowner's coverage with Travelers or any of their affiliates.  I will not now or ever request Travelers to defend, indemnify, or reimburse me for any amount in regards [sic] to this lawsuit.  I

6

understand that my coverage will not otherwise be effected [sic] as it relates to any other claim that may arise while I have coverage with Travelers or any of their affiliates."

{¶22} Two days later, Mr. Shell and Ms. Arias engaged in further email communication. Ms. Arias acknowledged Mr. Shell's prior email and stated she would have the letter agreement completed as soon as possible. They also discussed Attorney Oryshkewych's attempts to involve Travelers in the claim. Mr. Shell noted his receipt of two letters from Attorney Oryshkewych and stated he would not respond until Ms. Arias signed the letter agreement. On July 18, Ms. Arias and her husband signed the letter agreement in the presence of a notary public, and Ms. Arias emailed it to Mr. Shell.

{¶23} On July 20, Mr. Shell sent an email to Attorney Oryshkewych in which he acknowledged Attorney Oryshkewych's previous requests to involve Travelers in the lawsuit against Ms. Arias. He further wrote that (1) the reason Travelers had not responded was because Ms. Arias did not wish to have Travelers involved, which he characterized as "well within her rights," (2) Attorney Oryshkewych was not, nor had he ever been, a party to the policy and therefore had no right or authority to make a claim that Ms. Arias did not wish to tender, (3) Travelers would be closing its files, (4) Ms. Arias had "signed off" and would not have Travelers represent her in the lawsuit, and (5) Ms. Arias would continue to participate through her own counsel.

{¶24} Attorney Oryshkewych responded by reiterating his client's intention to file a supplemental complaint against Travelers pursuant to R.C. 3929.06 and stating nothing in the statute relieves the insurer of liability if the insured does not want the insurer involved.

7

*Post-Judgment Communications*

{¶25} In defending Ms. Arias against Ms. McCruter's lawsuit, Attorney Carter did not take any depositions or conduct formal discovery. Ms. Arias authorized him to make a settlement offer of $5,000 on her behalf, which was not accepted. The matter eventually proceeded to a bench trial. With Ms. Arias' approval, Attorney Carter stipulated to her liability. Ms. McCruter was the only witness to testify.

{¶26} On September 26, 2018, the trial court entered judgment in favor of Ms. McCruter and awarded damages of $16,780.68. Ms. Arias did not authorize Attorney Carter to file an appeal.

{¶27} On the same date, Attorney Oryshkewych sent an email to Mr. Shell informing him of the judgment and indicating he would file a supplement complaint against Travelers on his client's behalf if Travelers did not satisfy the judgment in full within 30 days. Mr. Shell responded by stating Travelers had a "policy-holder's release in place." When Attorney Oryshkewych contended that such a release would not preclude Travelers' statutory liability, Mr. Shell told him to "handle how you wish."

{¶28} On October 30, 2018, Mr. Shell sent an email to Ms. Arias inquiring about her plans regarding the judgment against her, suggesting that she may be responsible for Travelers' costs in defending a lawsuit against Ms. McCruter. Ms. Arias responded that she would not appeal the judgment and would force Ms. McCruter to pursue collection efforts against her in Georgia.

*The Supplemental Complaint*

{¶29} On November 1, 2018, Ms. McCruter filed a supplemental complaint against Travelers pursuant to R.C. 3929.06 in the Lake County Court of Common Pleas.

8

Travelers appeared through counsel and filed an answer. Travelers alleged that Ms. Arias breached conditions in the policy by failing to provide prompt notice of the alleged incident and by failing to cooperate with Travelers in the investigation, defense, and settlement of Ms. McCruter's lawsuit. Travelers attached the letter agreement as an exhibit.

{¶30} Travelers also filed a third-party complaint against Ms. Arias seeking a declaratory judgment that Travelers does not owe payment of Ms. McCruter's judgment because Ms. Arias breached conditions in the policy, and, alternatively, seeking reimbursement from Ms. Arias in the event it is required to pay Ms. McCruter's judgment.

{¶31} The record indicates that Ms. McCruter's counsel took the deposition of Mr. Shell.

{¶32} Travelers perfected service of its third-party complaint on Ms. Arias and subsequently moved for default judgment against her. The trial court issued a journal entry granting Travelers' motion for default judgment against Ms. Arias and ordering that a damages hearing be conducted in conjunction with the trial on the merits.

{¶33} Both parties filed motions for summary judgment. Travelers argued that it was not required to pay the judgment against Ms. Arias because Ms. Arias failed to comply with certain provisions set forth in the policy, which prejudiced Travelers. In support, Travelers submitted affidavits from Attorney Carter and Mr. Shell. Attorney Carter's and Mr. Shell's affidavits authenticated and referenced Ms. McCruter's complaint against Ms. Arias and the letter agreement. Mr. Shell's affidavit also authenticated and referenced email correspondence between himself and Ms. Arias as well as the policy.

9

{¶34} In her motion, Ms. McCruter argued that (1) she has established a prima facie case pursuant to R.C. 3929.06, (2) the plain language of the policy does not allow Ms. Arias to unilaterally thwart coverage, (3) Ms. Arias' defenses do not constitute "coverage defenses" under R.C. 3929.06(C)(1), (4) Ms. Arias cooperated with Travelers, and (5) public policy weighs against permitted an insured to choose to exclude coverage at the expense of injured persons. In support, Ms. McCruter submitted and referenced the deposition transcript of Mr. Shell and its accompanying exhibits. These exhibits include Attorney Oryshkewych's letters to Travelers, email correspondence between Mr. Shell and Ms. Arias and between Mr. Shell and Attorney Oryshkewych, the letter agreement, and the claim notes.

{¶35} Both parties also filed briefs in opposition and reply briefs.

### The Trial Court's Judgment Entry

{¶36} The trial court issued a judgment entry granting Travelers' motion for summary judgment and denying Ms. McCruter's motion for summary judgment.

{¶37} First, the trial court found that an insured's lack of cooperation constitutes a "coverage defense" under R.C. 3929.06(C)(1). Second, the trial court found that the "unrefuted" facts demonstrate Ms. Arias violated her duties under the policy by (a) failing to notify Travelers of the occurrence; (b) refusing to permit Travelers to defend the lawsuit, provide counsel of its choice, investigate, provide a defense, conduct pre-trial discovery, settle before trial, and appeal the judgment; and (c) refusing to assist Travelers' litigation of the case. Third, the trial court found that by refusing such actions and voluntarily electing to waive coverage, Ms. Arias relinquished any right to have Travelers defend,

10

indemnify, or reimburse her for the judgment. Finally, the trial court found that Ms. Arias' violations prejudiced Travelers' ability to resolve the matter as it saw fit.

{¶38} Since it found that Travelers was not liable to pay Ms. McCruter's judgment, the trial court found there could be no third-party complaint by Travelers against Ms. Arias. Therefore, the trial court dismissed Travelers' third-party complaint against Ms. Arias.

{¶39} Ms. McCruter timely appealed and presents the following assignment of error for our review:

{¶40} "The trial court erred, as a matter of law, by granting summary judgment against plaintiff/appellant and by denying plaintiff/appellant's motion for summary judgment."

### Grant of Summary Judgment to Travelers

{¶41} Within her first assignment of error, Ms. McCruter argues that the trial court erred by granting summary to Travelers.

### *Standard of Review*

{¶42} We review de novo a trial court's order granting summary judgment. *Sabo v. Zimmerman*, 11th Dist. Ashtabula No. 2012-A-0005, 2012-Ohio-4763, ¶ 9.

{¶43} Pursuant to Civ.R. 56(C), summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Welch v. Ziccarelli*, 11th Dist. Lake No. 2006-L-229, 2007-Ohio-4374, ¶ 36. In addition, it must appear from the evidence and stipulations that reasonable minds can come to only one conclusion, which is adverse to the nonmoving party. *Id*.

{¶44} "Since summary judgment denies the party his or her 'day in court' it is not to be viewed lightly as docket control or as a 'little trial'. The jurisprudence of summary

11

judgment standards has placed burdens on both the moving and the nonmoving party. In *Dresher v. Burt* [75 Ohio St.3d 280 (1996)], the Supreme Court of Ohio held that the moving party seeking summary judgment bears the initial burden of informing the trial court of the basis for the motion and identifying those portions of the record before the trial court that demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim. The evidence must be in the record or the motion cannot succeed. The moving party cannot discharge its initial burden under Civ.R. 56 simply by making a conclusory assertion that the nonmoving party has no evidence to prove its case but must be able to specifically point to some evidence of the type listed in Civ.R. 56(C) that affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving party's claims." *Id.* at ¶ 40.

{¶45} "If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied. If the moving party has satisfied its initial burden, the nonmoving party has a reciprocal burden outlined in the last sentence of Civ.R. 56(E) to set forth specific facts showing there is a genuine issue for trial. If the nonmoving party fails to do so, summary judgment, if appropriate shall be entered against the nonmoving party based on the principles that have been firmly established in Ohio for quite some time in *Mitseff v. Wheeler* (1988), 38 Ohio St.3d 112." *Id.*

{¶46} Further, in considering a motion for summary judgment, a court must determine only whether reasonable minds can reach more than one conclusion on the facts. The court must not weigh the evidence or determine the merits of the case or the credibility of the witnesses. *Kreais v. Chemi-trol Chem. Co.*, 52 Ohio App.3d 74, 78 (6th Dist.1989); *Turner v. Turner*, 67 Ohio St.3d 337, 341-342 (1993). The purpose of

summary judgment is not to try issues of fact, but to determine whether triable issues of fact exist. *McGee v. Goodyear Atomic Corp.*, 103 Ohio App.3d 236, 242-243 (4th Dist.1995). Not only is it the duty of the court to closely scrutinize the evidence in favor of the movant, but it must view it, as well as any inferences which may be made from that evidence, in the most favorable light to the opposing party. *Allstate Ins. Co. v. Baileys*, 192 F.Supp. 595, 596 (N.D.Ohio 1958). Summary judgment should not be granted where the facts, although not in dispute, are subject to conflicting inferences. *Cottrell v. Mayfield*, 11th Dist. Portage No. 1730, 1987 WL 10758, *1 (May 1, 1987).

### Choice of Law

{¶47} The record indicates that Travelers issued the policy in Georgia to Ms. McCruter, who is a Georgia resident. The policy does not contain a choice of law provision. In cases involving a contract, the law of the state where the contract is made governs interpretation of the contract. *Nationwide Mut. Ins. Co. v. Ferrin*, 21 Ohio St.3d 43, 44 (1986). Resort to the principles of conflict of laws is necessary only if there is an actual conflict between local law and the law of another jurisdiction. *Akro-Plastics v. Drake Indus.*, 115 Ohio App.3d 221, 224 (11th Dist.1996). Since this court's research has disclosed that Ohio and Georgia would apply like principles of insurance law, and since the outcome of this case would be the same regardless of which state's law is applied, Ohio law will be applied in this opinion. *See Elkins v. Am. Intern. Special Lines Ins. Co.*, 611 F.Supp.2d 752, 761 (S.D.Ohio 2009).

### Principles of Liability Insurance

{¶48} To properly address Ms. McCruter's assignment of error, it is necessary to discuss the nature of her lawsuit against Travelers.

**{¶49}** R.C. 3929.05 and 3929.06 address liability insurance for bodily injury or death. These statutes are to be construed together. *Steinbach v. Maryland Cas. Co.*, 15 Ohio App. 392, 394 (2d Dist.1921).

Benefitted Parties

**{¶50}** R.C. 3929.05 provides that "[w]henever a loss or damage occurs on account of a casualty covered by a contract of insurance made between an insurance company and any person * * * by which contract such person * * * is insured against loss or damage on account of the bodily injury or death by accident of any person for which loss or damage such person * * * is responsible, the liability of the insurance company is absolute, and the payment of said loss does not depend upon the satisfaction by the assured of a final judgment against him for loss, damage, or death occasioned by such casualty."

**{¶51}** According to the Supreme Court of Ohio, a policy of liability insurance is primarily for the insured's own benefit but also for the benefit of third parties who might be injured by the insured's actions. *See Conold v. Stern*, 138 Ohio St. 352, 364 (1941); *see Evans v. Grange Mut. Cas. Co.*, 12 Ohio Misc. 108, 110 (C.P.1964) ("Truly the contract of insurance * * * is actually a contract for the benefit of a third party who has been aggrieved as well as for the protection of the negligent party"). Thus, the court has held that an injured person has a potential interest and a substantial right in an insurance policy from the very moment of his or her injury, although it does not develop into a vested right until a judgment is secured against the insured. *Hartford Acc. & Indem. Co. v. Randall*, 125 Ohio St. 581, 585-586 (1932).

**{¶52}** The insurance company's interest in the case also precedes judgment against the insured, since the insurer investigates, defends, and even settles claims.

*Evans* at 112. The only reason the insurance company is not made a party defendant by law is that such would apprise the jury that the negligent defendant is covered by insurance. *Id.*

{¶53} The liability of an insurance company becomes "absolute" under R.C. 3929.05 only in the sense that the payment of loss shall not depend upon the satisfaction by the insured of a final judgment against him or her. *Luntz v. Stern*, 135 Ohio St. 225 (1939), paragraph one of the syllabus.

<u>No Cancellation</u>

{¶54} R.C. 3929.05 further provides that "[n]o such contract of insurance shall be canceled or annulled by any agreement between the insurance company and the assured after said assured has become responsible for such loss, damage, or death, and any such cancellation or annulment is void." The purpose of this provision is to secure the right of the injured person against the insurance company free from the right of the insurance company to settle with the insured and cancel the policy after the responsibility against the insured attached. *Steinbach* at 394.

<u>Supplemental Complaint</u>

{¶55} Under R.C. 3929.06, plaintiffs who are awarded damages at trial may file a posttrial, supplemental complaint against the judgment debtor's insurer to recover damages covered under the judgment debtor's insurance policy. *Estate of Heintzelman v. Air Experts, Inc.*, 126 Ohio St.3d 138, 2010-Ohio-3264, ¶ 11. Specifically, R.C. 3929.06(A)(1) provides that the plaintiff "is entitled as judgment creditor to have an amount up to the remaining limit of liability coverage provided in the judgment debtor's policy of liability insurance applied to the satisfaction of the final judgment." If the

15

judgment debtor's insurer has not paid the judgment creditor within 30 days of the entry of final judgment, "the judgment creditor may file in the court that entered the final judgment a supplemental complaint against the insurer seeking the entry of a judgment ordering the insurer to pay the judgment creditor the requisite amount." R.C. 3929.06(A)(2). The Supreme Court of Ohio has stated that the purpose of R.C. 3926.06 is to afford the injured person direct and prompt benefit of the insured's policy. *Luntz* at 229.

Affirmative Defenses

{¶56} In a judgment creditors' action against the insurer under R.C. 3929.06, "the insurer has and may assert as an affirmative defense against the judgment creditor any coverage defenses that the insurer possesses and could assert against the holder of the policy in a declaratory judgment action or proceeding under R.C. Chapter 2721. of the Revised Code between the holder and the insurer." R.C. 3929.06(C)(1).

{¶57} According to the Supreme Court of Ohio, the judgment creditor's right "against the insurer, if any, is a derivative right implied in law by way of subrogation to the rights of the insured against the insurer." *Conold* at 365. As a result, "the right of a judgment creditor against the insurer can rise no higher than the rights of the insured judgment debtor against such insurer." *Id.* Thus, if there is no coverage under the terms of the policy for the judgment debtor's liability, the insurer can raise those defenses against the judgment creditor. *Estate of Heintzelman* at ¶ 11.

{¶58} The court has recognized that an insured's breach of the policy through nonperformance may void the policy before a judgment creditor is able to enforce his claim against the insured. *Conold* at 360-361 ("[I]f the policy * * * becomes void by

16

nonperformance of the insured, it is void as to all parties who may thereafter claim under it"). Thus, the court has held "the failure on the part of the insured * * *, without collusion or fraudulent conduct with the insurer, to perform conditions subsequent * * * must affect all such claims thereafter asserted * * *." *Id*. at 361.

{¶59} The court has also held that a judgment creditor has standing in a supplemental proceeding to assert that the insurer waived policy conditions by failing to defend its insured in the underlying action, even in the absence of a written assignment or other contractual right. *Sanderson v. Ohio Edison Co.*, 69 Ohio St.3d 582, 587 (1994).

### *Principles of Contract Interpretation*

{¶60} Travelers argues there is no genuine dispute that Ms. Arias failed to fully comply with the terms of the policy and that her failure to comply prejudiced Travelers. Therefore, Travelers argues that it has no duty to provide coverage or to pay Ms. McCruter's judgment against Ms. Arias.

{¶61} Travelers' asserted defense involves the interpretation of its insurance policy with Ms. Arias. A decision granting summary judgment based on interpretation of an insurance contract is a question of law. *Doe v. Sherwin*, 11th Dist. Portage No. 2013-P-0058, 2015-Ohio-2451, ¶ 11.

{¶62} When confronted with an issue of contractual interpretation, the role of a court is to give effect to the intent of the parties to the agreement. *Westfield Ins. Co. v. Galatis*, 100 Ohio St.3d 216, 2003-Ohio-5849, ¶ 11. The court examines the insurance contract as a whole and presumes that the intent of the parties is reflected in the language used in the policy. *Id*. The court looks to the plain and ordinary meaning of the language used in the policy unless another meaning is clearly apparent from the contents of the

17

policy. *Id.* When the language of a written contract is clear, a court may look no further than the writing itself to find the intent of the parties. *Id.* As a matter of law, a contract is unambiguous if it can be given a definite legal meaning. *Id.* When interpreting an insurance contract, any ambiguities will be construed strictly against the insurer and liberally in favor of the insured. *Id.* at ¶13.

{¶63} With the above principles in mind, we address the merits of Ms. McCruter's appeal.

### *Refusal to Permit Travelers' Performance*

{¶64} Travelers argues that Ms. Arias breached several policy provisions. Therefore, it contends that Ms. Arias did not comply with the policy's "Suit Against Us" provision, which states, in relevant part, that "[n]o action can be brought against [Travelers] unless there has been full compliance with all the terms under this Section II."

{¶65} First, Travelers argues that Ms. Arias breached the policy's "Coverage E – Personal Liability" provision, which states as follows:

{¶66} "If a claim is made or a suit is brought against an 'insured' for damages because of 'bodily injury' or 'property damage' caused by an 'occurrence' to which this coverage applies, we will:

{¶67} "1. Pay up to our limit of liability for the damages for which an 'insured' is legally liable. Damages include prejudgment interest awarded against an 'insured'; and

{¶68} "2. Provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to settle or defend ends when our limit of liability for the 'occurrence' is exhausted by the payment of a judgment or settlement."

18

{¶69} Travelers argues that Ms. Arias refused to *permit* Travelers to defend and indemnify her and to investigate and settle Ms. McCruter's lawsuit.

{¶70} Travelers' interpretation is not consistent with the express language of the policy. The "Suit Against Us" provision requires Ms. Arias' "full compliance with all the terms under *this Section II*." (Emphasis added.) Section II contains multiple parts. The "Duties After 'Occurrence'" provision is set forth in "Section II – Conditions," and it describes the duties the *insured* must perform for Travelers to provide coverage. By contrast, "Coverage E – Personal Liability" is set forth in "Section II - Liability Coverages," and it describes contractual duties that *Travelers* owes to its insured. Ms. Arias cannot violate a policy provision that imposes no duties upon her.

{¶71} None of the cases cited by Travelers support the proposition that an insured violates an insurance policy by refusing to allow an insurer to perform its contractual duties. Rather, the cited cases recognize that under a nonperformance defense, an insured's failure to comply with policy conditions potentially *relieves* the insurer of its contractual obligations. *Johnson v. Allstate Ins. Co.*, 11th Dist. Trumbull No. 2001-T-0127, 2002-Ohio-7165, ¶ 30, quoting *Gabor v. State Farm Mut. Auto. Ins. Co.*, 66 Ohio App.3d 141, 143 (8th Dist.1990) ("When cooperation is a policy condition and the insured fails to comply, in the absence of waiver or estoppel, 'the insurer may be relieved of further obligation with respect to a claim with which the insured did not cooperate'").

{¶72} Therefore, Ms. Arias' violations of the policy, if any, must involve the "Duties After 'Occurrence'" provision, which we will address below.

{¶73} The trial court found that Ms. Arias violated the policy by refusing to "*let* Travelers defend the action, "*let* Travelers provide counsel of its choice, "*allow* Travelers

19

to investigate and provide a defense of Travelers' choosing," "*let* Travelers conduct pre-trial discovery," "*allow* Travelers to settle the matter prior to trial," and "*let* Travelers appeal the judgment thereafter." (Emphasis added.) Thus, it appears the trial court found that Ms. Arias violated "Coverage E – Personal Liability," which constitutes an error of law because, as previously noted, the insured cannot violate a policy requirement that imposes no duties upon the insured.

### *Notice Requirement*

{¶74} Second, Travelers argues that Ms. Arias breached the notice requirement set forth in the "Duties After 'Occurrence'" provision, which states, in relevant part, as follows:

{¶75} "In case of an 'occurrence', you or another 'insured' will perform the following duties that apply. We have no duty to provide coverage under this policy if your failure to comply with the following duties is prejudicial to us. You will help us by seeing that these duties are performed:

{¶76} "a. Give us written notice as soon as is practical, which sets forth:

{¶77} "(1) The identity of the policy and the named 'insured' shown in the Declarations;

{¶78} "(2) Reasonably available information on the time, place and circumstances of the 'occurrence'; and

{¶79} "(3) Names and addresses of any claimants and witnesses;

{¶80} Notice provisions allow the insurer (1) to become aware of occurrences early enough that it can have a meaningful opportunity to investigate, (2) the ability to determine whether the allegations state a claim that is covered by the policy, (3) to step

20

in and control the potential litigation, protect its own interests, maintain the proper reserves in its accounts, and pursue possible subrogation claims, and (4) to make timely investigations of occurrences in order to evaluate claims and to defend against fraudulent, invalid, or excessive claims. *Ormet Primary Aluminum Corp. v. Employers Ins. of Wausau*, 88 Ohio St.3d 292, 302-303 (2000).

{¶81} Travelers argues that Ms. Arias failed to give Travelers "written notice" of the incident "as soon as practical."

{¶82} The Supreme Court of Ohio has created a two-step analysis to be applied in determining whether coverage may be avoided based upon late notice. *Ferrando v. Auto-Owners Mut. Ins. Co.*, 98 Ohio St.3d 186, 2002-Ohio-7217, ¶ 90. First, the court must determine whether the insured's notice was timely. *Id.* This determination is based on asking whether the insurer received notice "within a reasonable time in light of all the surrounding facts and circumstances." *Id.* If the insurer did not receive reasonable notice, the next step is to inquire whether the insurer was prejudiced. *Id.* Unreasonable notice creates a presumption of prejudice to the insurer, which the insured bears the burden of evidence to rebut. *Id.* The question of whether the insured met the notice condition is usually a question for the jury. *Ormet Primary* at 300.

{¶83} It is undisputed that Ms. Arias did not notify Travelers about the incident or the lawsuit. Instead, Travelers first became aware of the matter after Attorney Oryshkewych sent a letter to Travelers enclosing a copy of the complaint. According to the Supreme Court of Ohio, however, because of an injured person's "potential interest and a substantial right in the policy from the very moment of his injury," his or her

21

performance of policy conditions is effective against the insurer. *See Hartford, supra*, at 585-86.

{¶84} It is also undisputed that Travelers did not receive Attorney Oryshkewych's letter until May 18, 2018, which was over ten months after the incident (July 2, 2017) and approximately four months prior to the bench trial (September 24, 2018). However, we find there are genuine issues of material fact as to whether Travelers waived strict compliance with the policy's notice requirement.

Waiver

{¶85} It is a basic principle of contract law that a party to a contract who would benefit from a condition precedent to its performance may waive that condition. *Thomas v. Nationwide Mut. Ins. Co.*, 177 Ohio App.3d 502, 2008-Ohio-3662, ¶ 93 (8th Dist.). An insurer may waive a policy's requirements through the words, acts, or conduct of its authorized agent. *See id.* at ¶ 99; *Lind v. State Auto. Mut. Ins. Assn.*, 128 Ohio St. 1, 7 (1934). When a condition is excused, its nonperformance is no bar to recovery on the contract. *Thomas* at ¶ 93. Whether such waiver has taken place is generally a question of fact for the jury. *Jokic v. State Auto. Mut. Ins. Co.*, 11th Dist. Lake No. 2004-L-135, 2005-Ohio-7044, ¶ 35.

{¶86} Courts have long held that an insurance company waives a policy's notice provisions when it disclaims all liability under the policy. In *Hartford, supra*, the Supreme Court of Ohio held that "[w]here a policy of indemnity casualty insurance obligates the insurance company to defend, in the name and on behalf of the assured, any suit against the assured within the terms of the policy, and as a condition thereto requires that immediate notice of such be given to the company, such notice is waived if, prior to such

22

suit, the company by its authorized agent disclaims liability to indemnify and declares its intention not to defend the suit for that reason." *Id.* at paragraph three of the syllabus.

{¶87} In *Costa v. Cox*, 84 Ohio Law Abs. 338, 171 N.E.2d 529 (9th Dist.1958), *aff'd*, 168 Ohio St. 379 (1958), the Ninth District found waiver on the part of the insurance company where, following its receipt of notice from the injured person's counsel, it conducted only a "casual" investigation and disclaimed all liability for damages and any duty to defend the insured. *Id.* at 534; *see also Patterson v. Tice*, 91 Ohio App.3d 414, 419 (5th Dist.1993) (waiver found where, following its receipt of notice from the injured person's counsel, the insurance company made a "casual determination" that it had no duty to defend and did not intervene in the underlying action or "otherwise judicially ascertain its duty to defend its interests or those of its insured"); *Jones v. Sailer*, 12th Dist. Fayette No. CA89-06-012, 1990 WL 14808, *3 (Feb. 20, 1990) (waiver found where, subsequent to learning of the accident, the insurance company denied liability and retroactively cancelled coverage).

{¶88} Here, Travelers first received notice of the incident and the lawsuit from Ms. McCruter's counsel. Subsequently, Travelers communicated with Ms. Arias, conducted a brief investigation of the incident, and determined whether it could accommodate her request to waive coverage for the incident and handle the matter on her own. Shortly thereafter, the parties entered into the letter agreement, whereby Travelers consented to Ms. Arias' request and purported to disclaim its duties to defend or indemnify Ms. Arias. Thus, there is a genuine issue of material fact as to whether Travelers waived the policy's notice requirement by virtue of the letter agreement.

**{¶89}** Even if Travelers did not waive the notice requirement, genuine issues of material fact exist as to whether Travelers was materially prejudiced by late notice.

**{¶90}** Prejudice has been described as "seriously impairing the insurer's ability to investigate a claim." *Johnson, supra*, at ¶ 31. Mr. Shell's affidavit states that Travelers was prejudiced because "an opportunity to investigate fully the alleged * * * injury, and the subject occurrence and claim, *was not seized*." (Emphasis added.) Mr. Shell's affidavit does not assert that late notice impaired Travelers' ability to "seize" such an opportunity. In fact, Mr. Shell's affidavit recounts information Ms. Arias provided to him regarding the circumstances of the injury, and the record reflects that Travelers engaged in some investigation.

**{¶91}** In addition, Mr. Shell's affidavit states that after receiving notice, Travelers "fully advised" Ms. Arias that it was "prepared to defend and indemnify" her in the lawsuit. Mr. Shell's affidavit does not state that Travelers was only prepared to defend Ms. Arias under a reservation of rights. Thus, Mr. Shell's assertion is not consistent with a claim of prejudicial late notice.

**{¶92}** The trial court found that Ms. Arias violated the policy by not placing Travelers on notice of the occurrence, which prejudiced Travelers. Since there are genuine issues of material fact regarding waiver and prejudice, we find the trial court erred by granting summary judgment to Travelers.

### Cooperation Requirements

**{¶93}** Third, Travelers argues that Ms. Arias violated the cooperation requirements set forth in the "Duties After 'Occurrence'" provision, which obligated Ms.

24

Arias to "[c]ooperate with [Travelers] in the investigation, settlement or defense or any claim or suit," and to "[p]romptly forward [Travelers] every notice, demand, summons or other process relating to the 'occurrence.'"

{¶94} In order to protect themselves from false claims, insurers frequently include clauses in their policies which mandate cooperation by the insured in investigating a claim. *Johnson* at ¶ 29. To constitute a defense to liability, an insured's lack of cooperation must result in material and substantial prejudice to the insurance company. *Id.* at ¶ 30.

{¶95} The issue of whether an insured has violated the cooperation clause of a policy is a question to be determined in view of the facts and circumstances in each case. *Id.* at ¶ 32. Generally, the issue of whether there has been a violation of an insurance policy is for the factfinder. *Id.*

### *Availability of Noncooperation Defense*

{¶96} We find that evidence in the record raises genuine issues of material fact as to whether the noncooperation defense is available to Travelers as a result of collusion and/or improper cancellation of the policy.

{¶97} As previously indicated, an injured person has a *potential* interest and a substantial right in an insurance policy from the very moment of his or her injury. *Hartford*, *supra*, at 585. The Supreme Court of Ohio held that for the insurer to assert a nonperformance defense against a judgment creditor's supplemental complaint, the insured's failure to perform must have been "without collusion or fraudulent conduct with the insurer." *Conold*, *supra*, at 361; *see* 7A Plitt, Maldono, Rogers & Plitt, *Couch on Insurance*, Section 106:30 (3d Ed.2019) ("[T]he rule subjecting the injured person to

25

defenses good against the insured does not apply in case of collusion between the insurer and the insured"). This is because the injured person is in no position to avoid the collusion or protect himself or herself from it. *Couch on Insurance* at Section 106:30.

{¶98} The definition of "collusion" includes "'where two persons, apparently in a hostile position and having conflicting interests, by arrangement do some act in order to injure a third person or deceive a court.'" *Valley Paint v. Natl. Union Fire Ins. Co. of Pittsburgh*, 12th Dist. Clermont No. CA2010-08-060, 2011-Ohio-1308, ¶ 15, quoting *Scofield v. Excelsior Oil Co.*, 31 Ohio C.D. 416 (1905).

{¶99} Further, R.C. 3929.05 expressly voids any "cancellation or annulment" of an insurance policy covering bodily injury or death by "any agreement between" the insured and insurer after the insured "has become responsible" for such loss. Courts have consistently held that an insured "has become responsible" for purposes of R.C. 3929.05 when an injury occurs. *See, e.g., Conold* at 364-365 (holding that the statute prohibits cancellation "after an injury occurs"); *Loxley v. Motorists Mut. Ins. Co.*, 2d Dist. Montgomery No. 20156, 2004-Ohio-3771, ¶ 59 (holding that the occurrence of an accident when the policy was in effect precluded cancellation of the policy retroactive to a date prior to the accident); *McGuire v. Mills*, 4th Dist. Ross No. 98CA2462, 1999 WL 685873, *5 (Aug. 30, 1999) (holding that the statute prevented retroactive cancellation after an accident); *Commercial Union Ins. Co. v. The Travelers Ins. Co.*, 10th Dist. Franklin No. 80AP-354, 1980 WL 353760, *2 (Oct. 23, 1980) (finding cancellation ineffective where the procedures were completed after the date of the accident); *Jones*, *supra*, at *3 (holding that insurer's cancellation of coverage subsequent to an accident directly violated the statute).

{¶100} In this case, both Ms. Arias' and Travelers' interests in avoiding liability conflicted with Ms. McCruter's interest in obtaining money damages. After the incident but before trial, Ms. Arias and Mr. Shell exchanged several email communications. Although Attorney Oryshkewych had sent two letters to Travelers asserting Ms. McCruter's potential rights under the policy, he was excluded from these communications. Ultimately, Travelers and Ms. Arias entered into a letter agreement whereby Ms. Arias purported to waive insurance coverage for the incident and Travelers purported to disclaim its duties to defend and indemnify Ms. Arias.

{¶101} While Travelers characterizes the letter agreement as merely confirmation of Ms. Arias' unilateral decision to reject coverage, the agreement itself contradicts this statement. The letter agreement explicitly states that "[b]y sign[ing] the attached page, you are stating that you understand and agree that you are not *going to* cooperate or allow us to investigate or defend you in this matter *any longer*." (Emphasis added.) Further, the parties expressly acknowledged that Ms. Arias' actions "may result in an irrevocable prejudice with Travelers [that] would potentially void coverage under this policy for this loss."

{¶102} This language may be reasonably construed as a directive to Ms. Arias to not perform her duties under the policy on a going forward basis despite potential prejudice to Travelers. Ms. Arias' noncompliance would also have the potential effect of prejudicing Ms. McCruter's derivative rights as a judgment creditor operating under R.C. 3929.06.

{¶103} The trial court found that by signing the letter agreement, Ms. Arias "voluntarily elected to waive her right to coverage," and thus "relinquished any right to

have Travers defend, indemnify or reimburse her." Since evidence in the record supports inferences regarding collusion and/or improper cancellation of the policy under R.C. 3929.05, we find the trial court erred by granting summary judgment to Travelers.

### *Violation of Cooperation Requirements*

{¶104} Even if Travelers is not barred from asserting a noncooperation defense, we also find that genuine issues of material fact exist as to whether Ms. Arias violated the policy's cooperation requirements.

{¶105} The word "cooperate" means "to act or to operate jointly with another or others." *Cox*, *supra*, at 535. Metaphorically, it may be described as "'a two-way street' - an effort on the part of the insurance company to fulfill its contract, coupled with the help and assistance of the insured." *Id.* In essence, a cooperation provision gives the insurance company a right to the assistance and help of the insured. *Id.* Before this right can be demanded, however, the insurance company must fulfill its contractual obligations. *Id.*

### Investigation

{¶106} Travelers argues that Ms. Arias did not cooperate in the investigation of the lawsuit. However, the record suggests that Ms. Arias cooperated with Travelers to the extent Travelers requested her cooperation. For instance, Mr. Shell sent an email to Ms. Arias posing a series of questions regarding the dogs she owns. Approximately two and half hours later, Ms. Arias responded with the requested information as well as a description of the incident. At his deposition, Mr. Shell acknowledged that Ms. Arias provided him with everything he had asked for and cooperated with him.

## Duty to Defend

{¶107} Travelers also argues that Ms. Arias did not cooperate in the defense of the lawsuit.

{¶108} In his affidavit, Mr. Shell's states that after receiving notice of the lawsuit from Attorney Oryshkewych, Travelers "made a good faith effort to defend and indemnify" Ms. Arias and "fully advised" her "that it was prepared to defend and indemnify" her.

{¶109} We note that there is a difference between an insurance company's duty to defend and its duty to indemnify. A duty to defend arises if the allegations in the pleadings state a claim "potentially or arguably" within the policy's coverage. *Wedge Prods., Inc. v. Hartford Equity Sales Co.*, 31 Ohio St.3d 65, 67 (1987). By contrast, the duty to indemnify arises from the conclusive facts and resulting judgment. *Pilkington N. Am., Inc. v. Travelers Cas. & Sur. Co.*, 112 Ohio St.3d 482, 2006-Ohio-6551, ¶ 33. Since Travelers received notice of the lawsuit prior to trial, it could not have tried to indemnify Ms. Arias.

{¶110} Further, evidence in the record conflicts with Mr. Shell's unequivocal claim that Travelers attempted to defend Ms. Arias.

{¶111} In her first email to Mr. Shell, Ms. Arias states that she is not filing a claim and has hired her own attorney. Mr. Shell wrote back that Travelers "normally" has a contractual duty to defend but that he "understood her position," that it was a "tricky situation," and that he would determine Travelers' options. In his second email, Mr. Shell requested information from Ms. Arias so he could "push this to be closed." In his deposition, Mr. Shell testified that Travelers felt Ms. Arias had a right to decline coverage under the policy and that they were attempting to "appease" her.

29

{¶112} In the letter agreement, Travelers references Ms. Arias' "request" to proceed on her own and states it must "discuss her rights" before it "can agree to" her "decision." While the letter agreement contains some policy analysis, there is no express statement that Ms. Arias is entitled to a defense even under a reservation of rights.

{¶113} In fact, the letter agreement states: "In your policy, coverage for defense is included, as is indemnity and medical payments. However, both [sic] are under the sole discretion of Travelers when they are involved in the defense of our insured." Further, in his deposition, Mr. Shell testified that if Ms. Arias had changed her mind regarding coverage, he does not know if Travelers would have covered the claim or even defended her with a reservation of rights.

{¶114} Ms. Arias' stated desire to defend the lawsuit on her own did not necessarily relieve Travelers of its obligation under the policy. The record does not reflect that Ms. Arias expressly refused to cooperate with Travelers. *See, e.g.*, *Consol. Stores Internatl. Corp. v. London Ins. & Reins. Market Assn.*, S.D.Ohio No. C2-96-1047, 2001 WL 1681139, *6 (Oct. 24, 2001) (breach of cooperation provision found where insured foreign entity "unequivocally stated" to its insurer that it would not appear in the action filed against it in the United States). As previously indicated, the letter agreement informs Ms. Arias that "you are not *going to* cooperate or allow us to investigate or defend you in this matter *any longer*." (Emphasis added.)

{¶115} Further, the policy provides that Travelers "will * * * [p]rovide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent." The Supreme Court of Ohio has held that this language "imposes an *absolute duty* upon the insurer to assume the defense of the action where the complaint states a claim which

30

is partially or arguably within policy coverage." (Emphasis added.) *Sanderson, supra*, at paragraph one of the syllabus. The insurer's failure to honor that obligation constitutes a material breach of the contract, and the insurer cannot be immunized from payment by its own breach of contract. *Id.* at 586-587.

{¶116} In addition, when an insurance company declines liability and refuses to defend, it waives the insured's further performance of policy conditions. *Suver v. Murphy*, 10th Dist. Franklin No. 79AP-669, 1980 WL 353350, *4 (Mar. 25, 1980). Neither the insured nor the injured party is required to perform conditions in a policy made vain and useless by reason of the insurer's prior breach. *Sanderson* at 587.

{¶117} To protect its rights, an insurer may intervene in the injured person's lawsuit and/or judicially ascertain its duties via a declaratory judgment action under R.C. 2721.02(A). *See Patterson, supra*, at 419 (holding that upon receipt of notice from the injured person's counsel, the insurer was required to "intervene in the underlying action or otherwise judicially ascertain its duty to defend its interests or those of its insured"). *Weller v. Farris*, 125 Ohio App.3d 270, 272-273 (2d Dist.1998) (involving an insurer that intervened in the personal injury action against its insured and sought declaratory judgment that it did not have a duty to defend because of the insured's failure to cooperate in the investigation of the accident).

{¶118} The letter agreement states that Travelers will not defend Ms. Arias or indemnify or reimburse her for any verdict and that Ms. Arias will not request that Travelers do so. Further, Travelers did not intervene in Ms. McCruter's lawsuit, and it did not file a declaratory judgment action against Ms. Arias until after her liability was

established. Thus, one could reasonably conclude that Travelers declined liability and refused to defend.

### Settlement

{¶119} Travelers further argues that Ms. Arias did not cooperate in the settlement of the lawsuit by promptly forwarding to Travelers every "notice, demand, summons or other process" regarding Ms. McCruter's pretrial settlement demands or position.

{¶120} Notably, Travelers does not assert that it opted to settle Ms. McCruter's lawsuit, nor does the record reflect an attempt to exercise that option. Rather, in Mr. Shell's first email to Attorney Oryshkewych, he asserted that Ms. McCruter had no right or authority to make a claim under the policy and that Travelers would be closing its files. After Attorney Oryshkewych informed Mr. Shell that Ms. McCruter had obtained judgment against Ms. Arias, Mr. Shell told Attorney Oryshkewych to "handle how you wish."

{¶121} Ms. Arias' stated desire to handle the lawsuit on her own did not impair Travelers' absolute right to settle a claim or lawsuit against its insured within policy limits. The policy states that Travelers "will * * * [p]rovide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent. We may investigate and settle any claim or suit *that we decide is appropriate*." (Emphasis added.) The Supreme Court of Ohio has held that this language "expressly and unambiguously" grants the insurance company "the option of settling any claims made against the [insured], regardless of whether such claims are groundless, frivolous or fraudulent if it determined that settlement [was] appropriate." *Marginian v. Allstate Ins. Co.*, 18 Ohio St.3d 345, 347 (1985). As long as the insurance company settles within the monetary limits of the policy, the insured has no claim against it for a breach of its duty of good faith. *Id.* at syllabus.

32

{¶122} The court has further held that an insurer's failure to defend relieves the insured of the duty to seek the insurer's assent to and participation in a proposed settlement. *Sanderson* at 586. "By abandoning the insureds to their own devices in resolving the suit, the insurer voluntarily forgoes the right to control the litigation and, consequently, will not be heard to complain concerning the resolution of the action in the absence of a showing of fraud, even if liability is conceded by the insureds as a part of settlement negotiations." *Id.*

{¶123} Since genuine issues of material fact exist as to whether Ms. Arias violated the cooperation requirements, there are necessarily genuine issues of material fact as to whether Ms. Arias' violations were the cause of material and substantial prejudice to Travelers.

{¶124} Accordingly, we find the trial court erred in granting summary judgment to Travelers as to Ms. Arias' alleged violations of the policy's cooperation requirements.

### *The Help Requirements*

{¶125} Finally, Travelers argues that Ms. Arias violated the "help" requirements set forth in the "Duties After 'Occurrence'" provision, which obligated Ms. Arias to "help" Travelers "at [its] request * * * (1) [t]o make a settlement; (2) [t]o enforce any right of contribution or indemnity against any person or organization who may be liable to an 'insured'; (3) [w]ith the conduct of suits and attend hearings and trials; and (4) [t]o secure and give evidence and obtain the attendance of witnesses."

{¶126} Travelers argues that Ms. Arias did not "help" it (1) to make a settlement (2) with the conduct of Ms. McCruter's lawsuit, (3) or to secure and give evidence and obtain the attendance of witnesses. As indicated, however, the express language of the

33

provision only requires Ms. Arias to "help" Travelers with such activities at Travelers' "request." Travelers does not allege that it made any requests for help with such activities, nor does the record reflect that it did. In fact, the record does not reflect that Travelers attempted to engage in any of these activities. Rather, Travelers entered into the letter agreement to avoid involvement in Ms. McCruter's lawsuit, and Ms. Arias' counsel handled her defense.

{¶127} The trial court found that Ms. Arias violated the policy by "refusing to assist Travelers' litigation of the case." Since Travelers did not meet its burden to establish that it requested Ms. Arias' assistance in litigation activities or that it even engaged in litigation activities, we find the trial court erred in granting summary judgment to Travelers.

{¶128} Ms. McCruter's sole assignment of error has merit in part.

**Denial of Summary Judgment to Ms. McCruter**

{¶129} Within her sole assignment of error, Ms. McCruter also argues that the trial court erred by denying her motion for summary judgment.

{¶130} We also review de novo a trial court's denial of a motion for summary judgment. *Meeker R & D, Inc. v. Evenflo Co. Inc.*, 2016-Ohio-2688, 52 N.E.3d 1207, ¶ 24 (11th Dist.).

{¶131} The basis of Ms. McCruter's motion for summary judgment is that Travelers did not establish its nonperformance defense. Since we have determined above that there are numerous genuine issues of material fact surrounding this defense, Ms. McCruter is also not entitled to summary judgment. Therefore, the trial court did not err by denying Ms. McCruter's motion for summary judgment.

{¶132} The remainder of Ms. McCruter's sole assignment of error is without merit.

34

{¶133} According to the Supreme Court of Ohio, "'[u]pon remand from an appellate court, the lower court is required to proceed from the point at which the error occurred.'" *State ex rel. Douglas v. Burlew*, 106 Ohio St.3d 180, 2005-Ohio-4382, ¶ 11, quoting *State ex rel. Stevenson v. Murray*, 69 Ohio St.2d 112, 113 (1982).

{¶134} In this case, error occurred when the trial court granted Travelers' motion for summary judgment. Upon remand, Ms. McCruter's claims against Travelers, as well as the determination of Travelers' damages with respect to its default judgment against Ms. Arias, remain pending.

{¶135} Based on the foregoing, the judgment of the Lake County Court of Common Pleas is affirmed in part and reversed in part, and this matter is remanded for further proceedings consistent with this opinion.


MATT LYNCH, J., concurs,

THOMAS R. WRIGHT, J., concurs with a Concurring Opinion.

_____

THOMAS R. WRIGHT, J., concurs with a Concurring Opinion.

{¶136} I agree that questions of fact remain that preclude summary judgment, but I disagree with the majority's conclusion that Ohio and Georgia law are synonymous.

{¶137} "It is well-settled in Ohio that in cases involving a contract, the law of the state where the contract is made governs interpretation of the contract. *Garlick v. McFarland* (1953), 159 Ohio St. 539, 545, 113 N.E.2d 92 [50 O.O. 445]; *Switzer v. Carroll* (C.A. 6, 1966), 358 F.2d 424, 426." *Nationwide Mut. Ins. Co. v. Ferrin*, 21 Ohio St.3d 43,

44, 487 N.E.2d 568 (1986); *accord Ohayon v. Safeco Ins. Co. of Illinois*, 91 Ohio St.3d 474, 747 N.E.2d 206; *Miller v. State Farm Mut. Auto. Ins. Co.*, 87 F.3d 822 (6th Cir.1996).

{¶138} Here, it is undisputed that the contract of insurance was entered into in Georgia and that the insureds are residents of Georgia. Thus, absent a choice of law provision, the determination necessary, whether under R.C. 3929.06(C)(1) Travelers has an affirmative defense, is governed via Georgia law. *Ferrin* at 44-45. And upon applying Georgia law to the mostly undisputed facts, the determinative issues are readily apparent.

{¶139} "The interpretation of an insurance policy is subject to the relevant general rules of contract construction, the cardinal rule being to determine and carry out the intent of the parties. * * * In making the determination of intent, a court is to consider the insurance policy as a whole, and a preferred construction will give effect to each provision, attempt to harmonize the provisions with each other, and not render any of the policy provisions meaningless or mere surplusage. *York Ins. Co. v. Williams Seafood of Albany, Inc.*, 273 Ga. 710, 712 (1), 544 S.E.2d 156 (2001). Furthermore, '[t]he policy should be read as a layman would read it. Additionally, exclusions will be strictly construed against the insurer and in favor of coverage.' *Id*. Finally, Georgia law provides that 'insurance companies are generally free to set the terms of their policies as they see fit so long as they do not violate the law or judicially cognizable public policy.' *Reed v. Auto-Owners Ins. Co.*, 284 Ga. 286, 287 (2), 667 S.E.2d 90 (2008)." *Natl. Cas. Co. v. Georgia School Bds. Assn.-Risk Mgt. Fund*, 304 Ga. 224, 228-29, 818 S.E.2d 250 (2018).

{¶140} In addressing a comparable dispute, the Georgia Supreme Court held:

{¶141} "To justify the denial of coverage for an insured's non-cooperation under Georgia law, the *insurer* must establish: * * * (a) that it *reasonably requested* the insured's

36

cooperation in defending against the plaintiff's claim, (b) that its insured *willfully and intentionally* failed to cooperate, and (c) that the insured's failure to cooperate prejudiced the insurer's defense of the claim. * * * *Vaughan v. ACCC Ins. Co.*, 314 Ga.App. 741, 742–743(2), 725 S.E.2d 855 (2012); *see also Cotton States Mut. Ins. Co. v. Proudfoot*, 123 Ga.App. 397(3), 181 S.E.2d 305 (1971); *H.Y. Akers & Sons, Inc. v. St. Louis Fire & Marine Ins. Co.*, 120 Ga.App. 800(3), 172 S.E.2d 355 (1969)." (Emphasis added.) *Travelers Home & Marine Ins. Co. v. Castellanos*, 297 Ga. 174, 177, 773 S.E.2d 184 (2015).

{¶142} "Once the insurer presents evidence that it was entitled to withdraw coverage, the burden shifts to the plaintiff to establish that the insured's failure to cooperate was justified." *Vaughan* at 743, citing *Wolverine Ins. Co. v. Sorrough*, 122 Ga.App. 556, 557(1)(a), 177 S.E.2d 819 (1970).

{¶143} One of the cases relied on, *H.Y. Akers & Sons, Inc.,* centrally addresses an insured's breach of the cooperation clause and held:

{¶144} "Usually, whether there has been a breach of the co-operation clause is a fact question. The insurer has the burden of showing, prima facie, a violation of the agreement by the insured and that *it has been diligent and acted in good faith in seeking to obtain the insured's co-operation.* The breach, once prima facie shown, shifts the burden to [the party] who seeks to enforce a claim under the policy to show justification or excuse therefor. The insurer is not required to anticipate or negate all excuses or reasons that might justify it." (Emphasis added.) *Id.* at paragraph three of the syllabus.

{¶145} And in *H.Y Akers & Sons, Inc.*, a Georgia court of appeals found:

{¶146} "A breach of the [cooperation] clause is prima facie shown when it appears that counsel employed to defend on behalf of the insured made reasonable effort to obtain the insured's co-operation.  If the asserted breach is the insured's failure to attend the trial of a case, a showing of reasonable effort to notify him of the time and place of the trial, as scheduled by the court, and a request for his attendance is sufficient."  *Id.* at paragraph four of the syllabus.

{¶147} Thus, under Georgia law, the insurer has the burden to show not only that it diligently sought its insured's cooperation, but also that the insured willfully and intentionally refused to cooperate.  Absent this showing, the burden does not shift to the insured to show justification for the failure to cooperate.  *Wolverine*, *supra*, at 557.

{¶148} Georgia law is closely aligned with leading legal treatises on this subject. *See* 14 Plitt, Maldono, Rogers & Plitt, *Couch on Insurance*, Section 199:21 (3d Ed.) (insurer must employ methods that are reasonably calculated to secure the insured's cooperation).

{¶149} "To effectively deny insurance coverage based upon lack of cooperation, an insurer must demonstrate (1) that it acted diligently in seeking to bring about the insured's cooperation, (2) that the efforts employed by the insurer were reasonably calculated to obtain the insured's cooperation, (3) that the attitude of the insured, after cooperation was sought, was one of willful and avowed obstruction, and (4) the insured's failure to cooperate prejudiced the insurer.  While an insurer who alleges a violation of a policy's cooperation clause need not show that the insured openly avowed an intent to obstruct the insurer, it is a heavy burden to show circumstances that support the inference

that the insured's failure to cooperate was deliberate." (Footnotes omitted.) 16 *Williston on Contracts*, Section 49:108 (4th Ed.).

{¶150} Ohio cases, on the other hand, are more focused on the extent of the insured's compliance and cooperation as well as the resulting prejudice to the insurer. *Bolton v. State Farm Fire & Cas. Co.*, N.D.Ohio No. 3:16 CV 220, 2017 WL 5132732, *15 (Nov. 6, 2017) ("Plaintiffs' refusal to produce the requested records was a breach of their duty to cooperate and materially prejudiced Defendant's investigation"); *Weller v. Farris*, 125 Ohio App.3d 270, 274, 708 N.E.2d 271 (2d Dist.1998) ("To avoid liability to the injured party, the insurer must establish that the insured's failure to cooperate prejudiced its rights and that the failure to cooperate was material and substantial"); *Johnson v. Allstate Ins. Co.*, 11th Dist. Trumbull No. 2001-T-0127, 2002-Ohio-7165, ¶ 30, quoting *Gabor v. State Farm Mut. Auto Ins. Co.*, 66 Ohio App.3d 141, 143-144, 583 N.E.2d 1041 (8th Dis.1990) ("'To constitute a defense to liability, an insured's lack of cooperation must result in material and substantial prejudice to the insurance company'").

{¶151} In light of the different focus, it is paramount we employ Georgia law.

{¶152} The facts in evidence here via Tony Shell's deposition testimony and the emails between Shell and Arias reveal that Arias told Maurice Brown, another Travelers agent, that she did not want Travelers to handle this in any way.

{¶153} Shell says Arias was adamant that she did not want Travelers to provide her with a defense, so he did what he could to comply with her request and even drafted a waiver of her coverage and closed the claim file after consulting Travelers' claims counsel.

{¶154} Yet before this occurred, Shell said that Arias was cooperative and answered his questions. Shell recalls that Arias was worried about increased insurance premiums.

{¶155} And while there is nothing evidencing that she withdrew her request not to file a claim, there is nothing evidencing that she was asked to take Traveler's defense counsel.

{¶156} Based on these limited facts, genuine issues of fact remain, and summary judgment was not warranted.

{¶157} On remand, the trier of fact must first determine if Travelers met its burden of proof establishing that it employed reasonably diligent efforts to secure Arias' cooperation and provide her with a defense. Second, it must decide whether Arias' request to Travelers not to file a claim constitutes a willful and intentional refusal to cooperate. Finally, it must determine whether Travelers was prejudiced as a result. These are questions of fact for the jury. Accordingly, summary judgment in either party's favor was improper.

{¶158} Thus, for the reasons stated, I agree with the ultimate holding reached by the majority, i.e., affirm in part, and reverse in part and remand, albeit for different reasons.

{¶159} Additionally, although I agree with the majority's conclusion that Travelers *could* have sought to intervene in the lawsuit in an effort to have the court determine its rights and responsibilities under the policy, I disagree that Travelers' decision not to do so amounts to "declined liability and [a] refus[al] to defend." Instead, intervening to secure declaratory judgment is but one way for an insurance company to ascertain its rights and

40

responsibilities under a policy of insurance. *See* Young, Bekeny & Mesko, *Ohio Insurance Coverage*, Section 11:2 (2020) (explaining that when "the insurer's sole concern appear[s] to be its potential obligation to indemnify the insured in the event of a judgment against it, the insurer ha[s] a number of options available to it, none of which require * * * intervention. For instance, it could deny coverage immediately; it could await a judgment against the insured and either deny coverage at that time (in which case the claimant could file a supplemental petition under R.C. 2929.06), or deny coverage and concurrently file a declaratory judgment action").

{¶160} Last, I write to point out that McCruter does not raise an argument regarding the validity of the written waiver in her motion for summary judgment or on appeal under R.C. 3929.05, and Travelers likewise does not raise it as a defense in support of summary judgment, and as such, this issue was not before the trial court for consideration, and we likewise should not address it. *U.S. Bank Natl. Assn., as Trustee under Pooling & Servicing Agreement dated as of September 1, 2006 MASTR Asset-Backed Securities Tr. 2006-NC2 Mtge. Pass-Through Certificates, Series 2006-NC2 v. Harper*, 9th Dist. Lorain No. 19CA011499, 2020-Ohio-4674, ¶ 17 (procedural due process in summary judgment requires the nonmoving party have an opportunity to respond); *Hooten v. Safe Auto Ins. Co.*, 100 Ohio St.3d 8, 2003-Ohio-4829, 795 N.E.2d 648, ¶ 34 ("Civ.R. 56's procedural fairness requirements place significant responsibilities on all parties and judges to ensure that summary judgment should be granted only after all parties have had a fair opportunity to be heard"). Moreover, collusion was not an argument raised by the parties, decided by the trial court, or raised on appeal, and as such, we should not address it either. *Id.*